**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:26-cv-61381-KMM

JUNIOR INDALECIO ALAYO CAULA,

     Petitioner,

v.

BROWARD TRANSITIONAL CENTER,

     Respondent.

_____/

## ORDER

THIS CAUSE came before the Court upon Petitioner Junior Indalecio Alayo Caula's *pro se* Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition" or "Pet."). (ECF No. 1). The Court issued an Order to Show Cause (the "OTSC") requiring Respondent to file a memorandum of fact and law to show cause why the Petition should not be granted. *See generally* (ECF No. 5). Respondent thereafter filed a Response to Order to Show Cause (the "Response" or "Resp."). (ECF No. 6). While Petitioner's time to reply to the Response has not yet expired, the Court nevertheless proceeds now with adjudicating the Petition as there have been factual developments since the Petition was filed that make Respondent's position correct as a matter of law. As set forth below, the Petition is DISMISSED WITHOUT PREJUDICE.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner alleges that he is in the physical custody of Respondent after being taken into custody on March 27, 2026. Pet. at 5. A native of Cuba, he entered the United States without admission, inspection, or parole on or about July 19, 2021, near Del Rio, Texas. (ECF No. 1-1) at 6–7; Resp. at 2; (ECF Nos. 6-1, 6-2). After his entry, Petitioner was encountered by U.S. Customs and Border Protection and was briefly taken into custody before being released on July 21, 2021

on his own recognizance.  Resp. at 2; (ECF Nos. 6-2, 6-5).

He remained released until he was arrested on March 25, 2026 for Petit Theft in Miami Dade County, on which date U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") encountered Petitioner at the Turner Guilford Knight Correctional Center and later assumed custody over him.  Resp. at 2; (ECF Nos. 6-2, 6-3).  On October 29, 2025, the Department of Homeland Security had issued Petitioner with a Notice to Appear, charging him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without admission or parole or who had arrived at a time or place other than properly designated by the Attorney General.  Resp. at 2; (ECF No. 1-1).  Petitioner's removal proceedings were then transferred to the Broward Transitional Center Immigration Court upon his detention by ICE ERO.  Resp. at 2; (ECF No. 1-5).

In the Petition, Petitioner alleges that he has been denied an opportunity to be heard on bond despite his lack of serious criminal history, steady employment, and community ties following his entry in 2021, including his newborn U.S. citizen son.  Pet. at 6–7.  He additionally states that he has a pending asylum application that is scheduled for a hearing in 2029.  *Id.* at 8. He asserts several grounds based on his detention without bond, either as violative of the applicable statutory framework and as a due process violation.  *See id.* at 6–8.  He thus asks the Court to release him or, alternatively, to order a bond redetermination.  *See id.* at 8; (ECF No. 1-1) at 1.

The Petition was filed on May 7, 2026, and the OTSC was issued on May 12, 2026.  *See* (ECF Nos. 1, 4).  In the OTSC, the Court assumed jurisdiction over the Petition, ordered that Petitioner was not to be transferred out of this District until the instant proceedings are terminated, and ordered Respondent to identify the attorney assigned to this case and file a memorandum of law and fact to show cause why the Petition should not be granted.  *See* (ECF No. 4) at 3–4.

Since the filing of the Petition, two significant developments occurred on May 12, 2026. First, an Immigration Judge denied Petitioner's request for a custody redetermination, finding that he was mandatorily detained under 8 U.S.C. § 1226(c)(1)(E) pursuant to the Laken Riley Act due to his arrest for Petit Theft, rather than pursuant to 8 U.S.C. § 1225(b)(2)(A) which is the basis for mandatory detention underlying the Petition and discussed below.  Resp. at 3; (ECF No. 6-4) at 1. Petitioner reserved his right to appeal that order.  (ECF No. 6-4) at 2.  Second, the same Immigration Judge ordered Petitioner removed to Cuba, and this time Petitioner waived his right to appeal that determination, making the removal order final.  Resp. at 3; (ECF No. 6-6) at 1, 4.

## II.    LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted).  The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).  Further, for "'core habeas petitions,' 'jurisdiction lies in only one district:  the district of confinement.'"  *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)).  The Court's habeas jurisdiction extends to challenges to immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

### a.  The Policy

The new policy underlying this action, "Interim Guidance Regarding Detention Authority

for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by DHS in coordination with the DOJ and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1)." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo"). The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* Contrary to previous practice, the Policy imposes mandatory detention regardless of the circumstances of an alien's entry without inspection or admission. *See generally* ICE Memo.

The BIA adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). On February 18, 2026, the Honorable Sunshine S. Sykes of the United States District Court for the Central District of California issued an Order wherein *Matter of Yajure Hurtado* was vacated as contrary to law under the APA. *See* Order Granting Plaintiff Petitioners' Motion to Enforce Judgment at 19, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). However, that decision was appealed and the Ninth Circuit granted the Government's request for a stay pending appeal of certain orders issued in the Central District of California case, including the order vacating *Matter of Yajure Hurtado*. *See* Order from Ninth Circuit Court of Appeals,

4

*Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Mar. 31, 2026). Thus, *Matter of Yajure Hurtado* remains in effect pending resolution of that appeal.

Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country. The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order, *Cerro Perez v. Parra et al.*, No. 25-cv-24820, at *6–11 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases). Nevertheless, a distinct split has emerged since. *See generally, e.g.*, *Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-cv-25966, 2026 WL 911291 (S.D. Fla. Apr. 2, 2026) (Ruiz, J.) (finding detention pursuant to § 1225(b) proper); *Morales v. Noem*, No. 25-cv-62598, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (same); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-cv-24121, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-cv-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same).

The Fifth and Eighth Circuits have both recently held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and are therefore not entitled to release on bond. *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th

494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026) determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination. The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, Nos. 25-14065, 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026).

### b. Administrative Exhaustion

As an initial matter, the Court agrees with Petitioner that administrative exhaustion would be futile. Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted). This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new precedent from the BIA. *See Puga*, 2025 WL 2938369, at *2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order, *Cerro Perez*, No. 25-cv-24820, at *3 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioner's detention pursuant to § 1225(b)(2)(A) to the extent *Matter of Yajure Hurtado* continues to be in effect while the Ninth Circuit appeal in *Maldonado Bautista* remains

pending.  Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

### c.  Statutory Framework

Turning then to the merits of the Petition, as an initial matter, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction."  *Sanchez-Moralez*, 2026 WL 496726, at *3.  The Eleventh Circuit has now directly answered this question:  § 1226(a) applies to "unadmitted aliens found in the interior of the United States."  *Hernandez Alvarez*, 2026 WL 1243395, at *1.  In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not.  *See id.* at *5–20.  As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."  *Id.* § 1225(a)(1).  Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim.  *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants

for admission not covered by § 1225(b)(1)," subject to several exceptions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," which governs removal.  8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined.  *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A).  Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.  Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General:  (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization.  *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework."  *See* 8

8

U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269.  The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[1]

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Such a finding would require a reading that all "applicants for admission," which is any alien present without admission or arriving, are also "seeking admission." *Id.*  As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop.  *Hernandez Alvarez*, 2026 WL 1243395, at *8 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing a word necessitates sharing a meaning, is unpersuasive.").

---

[1] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA.  The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.
>
> We therefore reject the Government's reading and affirm the district court's orders granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 2026 WL 1243395, at *21.

### d. Petitioner's Detention

Because federal courts are "courts of limited jurisdiction" vested with a *sua sponte* obligation to ensure their own jurisdiction over any matter, the Court starts first with Respondent's argument that the Court lacks jurisdiction to review Petitioner's requested relief under 8 U.S.C. § 1252(g). Resp. at 3–5; *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Court agrees with Respondent that the present posture of Petitioner's case squarely falls within the purview of § 1252(g), as a final order of removal has now been entered against Petitioner and any release would be a challenge to ICE's discretionary power to detain pending removal under 8 U.S.C. § 1231(a)(6). *See* Resp. at 4–5; 8 U.S.C. § 1231(a)(6)

10

("An alien ordered removed who is inadmissible under section 1182 of this title . . . may be detained beyond the [90-day] removal period[.]"); *Camarena v. Director, Imm. & Customs Enforcement*, 988 F.3d 1268, 1273 (11th Cir. 2021) (finding § 1252(g) bars jurisdiction as to execution of removal orders unless the validity or existence of removal order is challenged). There is no contention here that the removal order is somehow invalid or improper, and indeed Petitioner waived his right to appeal it. (ECF No. 6-6) at 4. The foregoing legal analysis as to 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2)(A), therefore, no longer applies to the legality of Petitioner's detention. Accordingly, the Court lacks jurisdiction to consider the requested relief of release or bond in this post-removal period.

Because the Court lacks jurisdiction, it will not move on to entertaining the merits of the Petition. *See Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012). Separately, however, the Court briefly makes one observation as to the arguments advanced in the Response. There is no contention whatsoever on the record that Petitioner acted in bad faith in filing this Petition, and indeed the Petition was filed prior to the final order of removal being entered. The Court thus cannot grasp why Respondent seeks to portray Petitioner as "asking the Court to prevent ICE from executing his final removal order" when no such final removal order existed at the time the Petition was filed. Resp. at 4. Nor can the Court discern the basis for Respondent's statement that "[t]he suggestion that [Petitioner's] detention is unlawfully prolonged lacks merit" under *Zadvydas v. Davis*, 533 U.S. 678 (2001), when Petitioner did not ground any of his due process arguments in *Zadvydas* or argue that his detention had been unconstitutionally prolonged, rather focusing on his "prolonged detention without adequate individualized review." Resp. at 5; Pet. at 8.

This has increased the burden on the Court in parsing what Petitioner asserted as well as in analyzing Respondent's proffered arguments for why the Court lacks jurisdiction, which is as ever

11

a crucial and non-optional inquiry.  Respondent is cautioned going forward to be accurate and responsive in its filings to the Court.

## IV.    CONCLUSION

Accordingly, UPON CONSIDERATION of the Petition, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Petition (ECF No. 1) is DISMISSED WITHOUT PREJUDICE.  Should Petitioner continued to be detained beyond the statutory period such that a due process violation may become ripe, he may renew those claims at such time.

DONE AND ORDERED in Chambers at Miami, Florida, this __18th__ day of May, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record